UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

MARTIN CENSOR

                       **Plaintiff**

    -against-

ASC TECHNOLOGIES OF CONNECTICUT,
LLC., LILLIAN SHAPIRO, THOMAS CECONI,
HR 360, INC. and JOHN DOES and JANE DOES
"1" through "5,"

                      **Defendants**

-------------------------------------------------------X

No. 1:11-cv-00571
(JBW)(RLM)

## CERTIFICATE OF SERVICE

      I hereby certify pursuant applicable court rules and or order that on
March 23, 2011, within 14 days of receipt of Defendants' Notice of Motion,
Affidavits, and Memorandum of Law, I served on behalf of Plaintiff, Martin
Censor, a true and complete copy of plaintiff's Memorandum of Law In
Opposition To Defendants' Motion to Dismiss Complaint and Motion to
Change Venue, by overnight mail, on the attorney of record for the
defendants at the following address:

    Richard J. Schager, Jr.
    Stamell & Schager, LLP
    One Liberty Plaza, 35th Floor
    New York, New York 10006-1404
    Telephone : 212-566-4047
    Facsimile: 212-566-4047
    Email : scahger@ssnyc.com

                                        **/s/ Stephen Dickerman**
                                        Stephen Dickerman

*Doc/Litigation/ censor-certificate of service 3-23-11*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

MARTIN CENSOR

               **Plaintiff**                 **No. 1:11-cv-00571
(JBW)(RLM)**

   -against-

ASC TECHNOLOGIES OF CONNECTICUT,
LLC., LILLIAN SHAPIRO, THOMAS CECONI,     **Filed Electronically**
HR 360, INC. and JOHN DOES and JANE DOES
"1" through "5,"

              **Defendants**

--------------------------------------------------------X


          **PLAINTIFF'S MEMORANDUM OF LAW
          IN OPPOSITION TO DEFENDANTS'
          MOTION TO DISMISS COMPLAINT AND
          MOTION TO CHANGE VENUE**

---

Stephen (Shlomo) Dickerman, of counsel (SD 2773)
Koven & Krausz
358 Fifth Avenue, Suite 301
New York, New York 10001
Telephone : (212) 736-7432
Facsimile:  (212) 967-2755
Email: mkrauszesq@aol.com

# TABLE OF CONTENTS

| | Page |
|---|---|
| SUMMARY OF THE ARGUMENT | 3 |
| FACTS | 7 |
| ARGUMENT | |
| I.   JURISDICTION OF THIS U.S. DISTRICT COURT IS PREDICATED UPON DIVERSITY, AND VENUE IS PROPER IN NEW YORK WHERE ALL COPYRIGHTABLE WORK WAS DONE BY PLAINTIFF, MARTIN CENSOR. | 8 |
| II.   GOVERNING PRECEDENT ESTABLISHES THAT A CONTRACT DISPUTE WHICH INCLUDES THE ISSUE OF OWNERSHIP OF COPYRIGHTABLE MATERIAL WARRANTS CONTINUING JURISDICTION OF THE U.S. DISTRICT COURT BY REASON OF DIVERSITY OF CITIZENSHIP. | 13 |
| III.   THE STATUTORY CRITERIA OF RULE 12(b) MOTIONS, AND RELEVANT CASE LAW DECIDED THEREUNDER, REQUIRES DENIAL OF DEFENDANTS' MOTION. | 17 |
| IV.   DEFENDANTS' CITED CASES ARE INAPPLICABLE TO THE FACTS OF PLAINTIFF'S COMPLAINT. | 20 |
| CONCLUSION | 29 |

## SUMMARY OF THE ARGUMENT

Plaintiff, by and through his attorneys, hereby submits his memorandum in opposition to Defendants' motion to dismiss which is joined with a motion to change venue.  By this Memorandum, plaintiff will demonstrate that defendants' motion is frivolous since plaintiff pleads facially sufficient causes of action and fully supports jurisdiction and venue, as a matter of law.  Accordingly, the motion should be denied.

Defendants, although residing in Connecticut, erroneously contend that this U.S. District Court in New York does not have jurisdiction of this action for breach of a Joint Venture Agreement commenced by a New York resident, Plaintiff Martin Censor. The Court document summarizing the essence of this case, a copy of which is Exhibit A of the Appendix to this Memorandum of Law, states the basis of jurisdiction is diversity of citizenship. The Joint Venture Agreement is governed by the laws of this State of New York, which is where Martin Censor performed all work which constitutes copyrightable materials, and successfully solicited subscribers in New York. It is certainly not Connecticut. The subject of the JOINT VENTURE, Benefits Essentials, was not doing business in Connecticut; it was doing business in New York where Plaintiff MARTIN CENSOR began its foundation work and subscriber relationships began many years prior to the Joint

3

Venture, and continued to do so diligently following the date of the JOINT VENTURE AGREEMENT.

The principal flaw in defendants' argument is that a purported "dissolution" has occurred.   A dissolution has, in fact, not occurred, and the contention of dissolution by mere withdrawal disregards the continuing obligation of "highest loyalty" during the required "winding up" period wherein the joint venture can be dissolved through an accounting. There was never an accounting nor was there consent to dissolution.   There was, however, a blatant transfer of Joint Venture properties to Defendant HR 360 Inc.

The essence of this case is not copyright infringement. This case pertains to a Joint Venture Agreement in which defendants meticulously and unlawfully diminished Martin Censor's income, while employing his materials, expertise, and ongoing updates, which he did in the State of New York, MARTIN CENSOR being the owner of the copyrightable materials protected by the Copyright Act of 1909. The Joint Venture Agreement set forth in the Verified Complaint is the only Agreement signed by the parties to this lawsuit. In defendants' motion, it is contended that another agreement was executed by the parties, other than that which is an Exhibit to the Verified Complaint.   This contention, which plaintiff believes to be untrue, is a fact that must, of necessity, be proven through discovery and trial, and is, in any event, irrelevant to this motion because:

1. The wording of the clause does not affect jurisdiction;

2. Venue is governed by statute and case law as detailed herein;

3. The clause does not specify exclusivity or consent to the use of a particular court.

4. The clause only speaks to choice of laws, and Connecticut law and New York law are substantively the same in this regard.

EXHIBIT B to this Memorandum of Law (the Joint Venture Agreement which is an Exhibit to Plaintiff's Verified Complaint) merely states (the title thereof as not being the substantive part of the Joint Venture Agreement):

> "(Applicable Law and Venue)
> This Agreement shall be construed and enforced under the laws
> Of the State of New York."

<u>There is no provision as to venue or jurisdiction.</u>

.    Defendants' motion to dismiss should be denied for the foregoing irrefutable reasons, and fundamental rule and governing precedent that a dismissal motion must be denied where plaintiff 's right to recovery can be established, from discovery and trial establishing "any state of facts" consistent with the allegations of the complaint, which here mandate an accounting that thoroughly considers the defendants' impropriety, past, present, and future. These facts will be explored further, and must be

explored further, in discovery, further warranting denial of defendants' motion.

The issue of future impropriety and present diminution of plaintiff's monetary rights is established in POINT III under "LEGAL ARGUMENT" herein, with respect to Defendant HR 360 INC., an entity that is inextricably tied to the actions of all other defendants. The United States Supreme Court criteria, which is far more important than the "boilerplate," irrelevant and generalized citations that defendants rely upon, is that in order to survive a motion to dismiss, the complaint must contain sufficient factual matter, which is accepted as true as a matter of law, to state a claim to relief that is plausible on its face; a complaint that has "facial plausibility" when plaintiff pleads factual content that allows a Court to draw a reasonable inference that defendants or one or more of them is liable for the misconduct alleged.

See, e.g., Ashcroft v. Iqbal (U.S. 2009) 129 S.Ct. 1937, 173 L.Ed.2d 868.

## FACTS

Plaintiff, MARTIN CENSOR, is the owner of a body of information protected by common law copyright, consisting of a database library on an on-line employee benefits law platform, developed by MARTIN CENSOR pursuant to his expertise in this field of law and business. MARTIN CENSOR, a New York attorney, and defendants, LILLIAN SHAPIRO and THOMAS CECONI, entered into a Joint Venture Agreement whereby LILLIAN SHAPIRO and THOMAS CECONI would market and maintain the materials on their computer servers. The Joint Venture Agreement is governed by New York Law. The date of the Joint Venture Agreement is April 11, 2003. The role of defendants, and/or one or more of them, was to expand upon the customers or subscribers who were principally in New York. LILLIAN SHAPIRO and THOMAS CECONI then maintained similar companies in New York, some of its computer facilities were in New York and some of its computer facilities remain in New York. Over that period, customers or subscribers were principally New York residents or businesses.

# ARGUMENT

## I.   JURISDICTION OF THIS U.S. DISTRICT COURT IS PREDICATED UPON DIVERSITY, AND VENUE IS PROPER IN NEW YORK WHERE ALL COPYRIGHTABLE WORK WAS DONE BY PLAINTIFF MARTIN CENSOR

This is an action for breach of a Joint Venture Agreement established between:

(a).   The intellectual property owner, Martin Censor, who developed employee benefits information, and as an attorney possessed recognized expertise in this area of business and law, over a period of many years prior to the execution of the Joint Venture Agreement, and had developed such knowledge, expertise, reputation, and clientele-subscribers in New York; and

(b).   ASC TECHNOLOGIES OF CONNECTICUT LLC whose principals, Lillian Shapiro, and Thomas Ceconi (also the principals of the co-Defendant, HR 360 INC., www.HR360.com, whose website is virtually identical to that of the Joint Venture, Benefits Essentials, www.BenefitsEssentials.com and www.HRandBenefits.com) claimed to have marketing expertise and computer management capabilities.

Contrary to the "boilerplate" and inapplicable generalized case law used by defendants' attorneys, venue under a federal copyright statute is not completely dependent upon state venue provisions, so as to allow venue to be proper in the federal judicial district in which defendant(s) claim(s) no contact.

(See, e.g., <u>Milwaukee Concrete Studios v. Fjeld Mfg. Co.,</u> 8 F.3d 441 , 7th Cir., 1998).

Furthermore, defendants' contentions are misrepresentations of a material fact, in that one or more of the computers servers upon which Thomas Ceconi and Lillian Shapiro were and still are dependent were, and still are, located in New York, and New York businesses had been established for Lillian Shapiro and Thomas Ceconi were in New York. These facts will be explored further, and must be explored further, in discovery, further warranting denial of the defendants' motion.

This Court's  jurisdiction is predicated upon diversity of citizenship, not copyright infringement. Theft of Martin Censor's intellectual property rights is only one of the ramifications of the breach of an agreement. The essence of this action is not copyright infringement, but breach of an agreement which is governed by New York law.  Plaintiff MARTIN CENSOR's continuous updating and maintenance of the legal and business information, unique to his expertise, and in fulfillment of his co-joint venturer responsibilities, was done

from his office in New York. Thus, defendants' claims in the present motion are

frivolous.

The complaint of Plaintiff MARTIN CENSOR alleges in relevant part:

"9.    This Court has jurisdiction pursuant to Section 1332 (diversity of
citizenship) of the Judicial Code (28 USCA 1332). Venue is conferred for this U.S.
District Court of the Eastern District of New York pursuant to Plaintiff's principal
place of business in the County of Queens, City and State of New York (28 U.S.
Code Section 1391(a))."

"12.    On April 11, 2003, CENSOR as copyright owner of the valuable
intellectual property rights, referred to above, entered into a Joint Venture
Agreement with ASC ("the Joint Venture Agreement") a copy of which is annexed
hereto as Exhibit "A." At that time, CENSOR preserved his rights as copyright
owner, and undertook responsibility for updating the content of the aforesaid
intellectual property, while ASC undertook responsibility for marketing and
technology, namely site development, maintenance, and what is referred to in the
computer industry as hosting the site on its servers and/or at its expense."

Thus, the law is clear that diversity of citizenship, based upon a breach of

agreement, although involving a copyright infringement issue, has been held to be

the basis of subject matter jurisdiction.

Freeman v. Gordon & Breach Science Publishers Inc. (S.D.N.Y. 1975), 398
F.Supp. 519;

London Film Productions Ltd. v. Intercontinental Communications Inc., (S.D.N.Y.
1984) 580 F.Supp. 47.

Accordingly, it is respectfully submitted that Defendants' motion has no

basis in fact or in law. Defendants' motion should be denied, and defendants

directed to file a Verified Answer, verified by one of the individual defendants,

who is admittedly a principal in each of the business entity defendants (one a

Limited Liability Company, the other a Corporation); and discovery to be scheduled, to proceed thereafter, pursuant to a schedule to be set by the Honorable Magistrate Judge.

Venue in this U.S. District Court, Eastern District of New York, is proper, by applicable criteria, and removal to Connecticut should be denied.  This breach of agreement lawsuit, which involves some copyright issues, requires application of the rationale of the U.S. Court of Appeals in <u>Milwaukee Concrete Studios v. Fjeld Mfg. Co., supra</u>, stating that such determination is not governed by state venue provisions so as to allow venue to be proper in the Federal judicial district in which plaintiff transacted the business here at issue, although a defendant claims "no contacts."  Whether the representation of "no contacts" by defendants, Shapiro and Ceconi, are true or untrue, the principal issue here is that all intellectual property work was done by Martin Censor in New York, the transaction of the business of Benefits Essentials was in New York, as well as Texas and California and other states and substantial income was received from New York customers and subscribers (see, e.g. <u>TIME INC V. MANNING</u>, 366 F. 2d 690 discussed in detail on page 20, 21 and 22 herein).  Therefore, the convenience of witnesses issue pertains to the New York subscribers, not to "convenience" of the defendants.  Martin Censor's records of services rendered, payments received, and diminution of payments all occurred, and continued to take place in New York.

The U.S. Court of Appeals addressed this issue in <u>Panavision Int'l. L.P. v.</u>
<u>Toeppen</u>, 141F.3d 1316 (9th Cir., 1998), setting forth a three part test, which
warrants this Court's venue, especially in light of diversity jurisdiction and in light
of the <u>TIME, INC. V. MANNING</u> supra criteria:

1.   The nonresident defendant does some act which results in transacting
     business in the forum state.  Here, the fact of New York subscribers
     satisfies this test.

2.    The claim must be one which arises out of, or results from, the
      defendant's forum related activities.  Here, the business of the Joint
      Venture, Benefits Essentials, was dependent upon the employee
      benefits law updates of Martin Censor's work and its income was
      dependent, to a substantial extent, upon New York subscribers'
      payments;

3.   Exercise of jurisdiction must be responsible.  All of the foregoing,
     establishing diversity jurisdiction, warrants the legal conclusion of the
     reasonableness of New York Federal Court jurisdiction.

## II. GOVERNING PRECEDENT ESTABLISHES THAT A CONTRACT DISPUTE WHICH INCLUDES THE ISSUE OF OWNERSHIP OF COPYRIGHTABLE MATERIAL WARRANTS CONTINUING JURISDICTION OF THE U.S. DISTRICT COURT BY REASON OF DIVERSITY OF CITIZENSHIP

The tests for determining whether a breach of contract suit "arises under" any Copyright Act, for jurisdictional purposes, requires consideration of whether the U.S. District Court complaint alleges breach of condition to the contract at issue, or whether the defendant claims assignment of copyright, or alleges breach of a covenant of the agreement, under which the District Court would have jurisdiction if the breach was material. Here, the copyright issue is only incidental to the contract claim. Under such facts and circumstances, the U.S. District Court jurisdiction would be clear, and irrefutable , upon the basis of diversity of citizenship.

See, e.g., Schoenberg v. Sapolsky Publishers Inc., 971 F.2d 926 (2d Cir., N.Y., 1992).

Similarly, the 2nd Circuit, U.S. Court of Appeals, in 2002, in Jasper v. Bovina Music, Inc., 314 F.3d 42 (2nd Cir., N.Y., 2002) held that if a case concerns a dispute which includes ownership of a copyright, and the involvement of the copyright turns on interpretation of a contract, federal court jurisdiction exists by reason of diversity. Here, in fact, there is no assignment of the copyright by plaintiff, MARTIN CENSOR. Judge Friendly of the Second Circuit, U.S. Court of

Appeals, New York, established this precedent in <u>T.B. Harms Co. v. Eliscu,</u> 339
F.2d 823, 825-28 (2nd Cir., 1964).

Where, as in the case at bar, the jurisdictional facts are "intertwined with the
merits…it is preferable that (the determination of jurisdiction) be made at trial,
where a plaintiff may present his case in a coherent, orderly fashion, and without
risk of prejudicing his case on the merits."

<u>Data Disc. Inc. v. Systems Technology Assocs. Inc.,</u> 557 F.2d 1280, 1285 n. 2 (9th
Cir., 1977).

Virtually every issue raised by Defendants' motion requires discovery,
following this Court's denial of Defendants' motion. Such discovery will result in
Plaintiff Martin Censor's entitlement to an accounting, which must extensively
detail and calculate the multiple areas of impropriety by defendants and each of
them, including the virtually identical business, and properties of the Joint Venture,
Benefits Essentials, in the façade of HR 360 INC., another Shapiro-Ceconi
company. The complaint sets forth, firstly, two causes of action, with regard to
defendants' unlawful conduct, one for copyright infringement which was achieved
through the vehicle of the Joint Venture Agreement, which was breached, and all
assets and business of the Joint Venture fraudulently conveyed to Defendant HR
360 INC.; and a second cause of action for breach of the Joint Venture Agreement:

"35.   By reason of the foregoing, Defendant ASC is in breach of the Joint
Venture Agreement."

There are additionally two other causes of action (Count Three and Count Four) with regard to damages and the calculation thereof, namely an accounting:

"47.   Pursuant to the terms of the Joint Venture Agreement, CENSOR was and still is entitled to a 50% distribution of all income of the Joint Venture and has duly demanded a full and complete accounting;"

and "fraud," establishing personal liability upon Defendant CECONI and Defendant SHAPIRO, thus increasing the magnitude of damages to be awarded, because fraud is inclusive of punitive damages:

"55.   Defendants, THOMAS CECONI and LILLIAN SHAPIRO, with intent to defraud and deceive MARTIN CENSOR, entered into a clandestine and illegal scheme on behalf of ASC, mandating the legal conclusion that each is personally liable to MARTIN CENSOR for all damages in this lawsuit…59. By reason of the foregoing, Plaintiff MARTIN CENSOR has been damaged in a sum of money to be determined by the Court or Jury for which CENSOR asks the Court to set damages at $5,000,000.00 and the relief requested in each of the Counts herein against Defendants ASC, CECONI, and SHAPIRO."

The WHEREFORE clause then proceeds to list "PUNITIVE DAMAGES" (WHEREFORE clause, line 6) amongst the $5,000,000.00 sought, "SUBJECT TO THE DETERMINATION OF A JURY AND/OR JUDGE OF THIS COURT, PLUS INTEREST, COSTS, AND DISBURSEMENTS."

Thus, Schoenberg v. Shapolsky Publishers Inc., supra, is substantially in point, providing authoritative guidance for the legal conclusion that the Court's jurisdiction is based upon breach of contract between residents of two separate states (diversity). Shoenberg, supra, alleged copyright infringement, breach of contract, and there was no diversity of citizenship. Subject matter jurisdiction was determined not to exist, clearly establishing the precedent that diversity would be

the basis of federal court jurisdiction in a complaint alleging breach of agreement between citizens of different states, whether or not a claim of copyright infringement is amongst the breach of agreement issues.

Similarly, <u>Felix Cinematografica, S.R.L. v. Penthouse International Ltd.,</u> 671 F.Supp. 313 (S.D.N.Y. 1987) held that the essence of the copyright infringement claim was a breach of agreement claim.

As more fully set forth in Point III herein, a court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" (<u>Conley v. Gibson,</u> 355 U.S. 41, 45-6; 2 L.Ed.2d 80, 78 S.Ct. 99 (1957).

"In other words, a Rule 12(b)(6) dismissal is proper only  where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory'." (<u>Balistreri v. Pacifica Police Dept.,</u> 901 F.2d 696., 699; 9th Cir., 1996) Federal Rule of Civil Procedure ("F.R.C.P."), Rule 12(b).

## III. THE STATUTORY CRITERIA OF RULE 12(b) MOTIONS, AND RELEVANT CASE LAW DECIDED THEREUNDER , REQUIRES DENIAL OF DEFENDANTS' MOTION

The United States Supreme Court criteria, as applied to the facts of this matter as set forth in Plaintiff MARTIN CENSOR's Verified Complaint, warrants denial of defendants' motion. In order to survive a motion to dismiss, the complaint must contain sufficient factual matter, which is accepted as true as a matter of law, to state a claim to relief that is plausible on its face; a complaint that has "facial plausibility" when plaintiff pleads factual content that allows a Court to draw a reasonable inference that defendants or one or more of them is liable for the misconduct alleged.

Ashcroft v. Iqbal (U.S., 2009), 129 S.Ct. 1937, 173 L.Ed.2d 868.

The contention of absence of adequate notice of the nature of the claim or claims is patently absurd. The complaint itself and exhibits thereto are crystal clear (and is Exhibit C in the Appendix to this Memorandum of Law). It is a well settled rule of law that the essence of a 12(b) motion is the pleading. Defendants' motion is crystal clear that it is not to be converted to a motion for summary judgment, and therefore affidavits are irrelevant and improper. What Lillian Shapiro and Thomas Ceconi say in their respective self-serving affidavits will have to be the subject of depositions under sworn testimony, once this Court applies 12(b) precedent, denies

defendants' motion, and directs defendants' answer to be served and filed by a date

certain, verified by Lillian Shapiro or Thomas Ceconi, and a discovery schedule is

set by the Honorable Magistrate Judge. The very fact that these defendants claim a

new form of the Joint Venture Agreement with an alleged clause as to a different

choice-of-law is proof positive that defendants have complete and adequate notice

of what this lawsuit claims. A 12(b) motion generally focuses upon Jurisdiction. I

respectfully submit that Point I and II herein demonstrate that this motion should

be denied, and this lawsuit should proceed in this U.S. District Court of New York.

Point II clearly demonstrates proper venue.

As an example of the clearly pleaded allegations of the complaint:

"9.    This Court has jurisdiction pursuant to Section 1332 (diversity of
citizenship) of the Judicial Code (28 U.S.C.A. 1332). Venue is conferred, for this
U.S. District Court of the Eastern District of New York, pursuant to Plaintiff's
principal place of business in the County of Queens, City and State of New York
(28 U.S.Code Section 1391(a) )."

"11.    At all times relevant hereto, and for a substantial period of time prior
to April 11, 2003, "Benefits Essentials" was marketed to individuals and entities
interested in the laws and regulations affecting employee benefits and employment
law, and sales of Benefits Essentials were, and still are, in the form of annual
subscriptions to an on-line library."

The works of MARTIN CENSOR, as pleaded, date back many years, and it

is these materials, and the subscription sales to New York subscribers, which

constitute the property of the Joint Venture. This property was unlawfully

transferred to Defendant HR 360 INC., which entity now continues to use the

virtually identical information database, solicitation technique, website format and information, and employs the information provided by MARTIN CENSOR over many years, and has the same officers and/or owners as defendant ASC. The attached Complaint and its exhibits negate the contentions of defendants' attorneys, as this motion is purely a matter of law. The "FACTS" portion of this Memorandum augments the complaint and its exhibits, by focusing on the facts pleaded, which are deemed admitted for purposes of this Court's decision upon defendants' motion.

Thus, defendants' 12(b) motion must be denied as a matter of law. The following decision also warrants such denial, and rejection of defendants' arguments, in conjunction with the aforesaid U.S. Supreme Court criteria:

Cruz v. Puerto Rico, D. Puerto Rico 2007, 558 F. Supp. 2d 165 (A District Court considering a motion to dismiss for failure to state a claim must view the plaintiff's complaint "through the prism of notice pleadings requirement" that the complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief and give fair notice of what the plaintiff's claim is and the grounds upon which it rests.)

## IV.   DEFENDANTS' CITED CASES ARE INAPPLICABLE TO THE FACTS OF PLAINTIFF'S COMPLAINT

Defendants' Memorandum of Law, by counsel, is erroneously predicated upon the contention that the jurisdiction of this Court is based upon violation of one or both of the federal copyright statutes. Jurisdiction is predicated upon Diversity of Citizenship. Defendants also refer to a Joint Venture Agreement other than that which is attached to plaintiff's Verified Complaint. Therefore, the case law upon which defendants, by counsel, rely is inapplicable. It is therefore appropriate to refer to many of these cases to demonstrate that each is inapplicable; not all cases being discussed because more than one case is sometimes alluded to for the same erroneous contention.

Defendant's case law as to venue, copyright and fraud are general "boilerplate" and inapplicable case law having no application to the facts here involved, which, for the purposes of a 12(b) motion, must be treated as truthful and controlling.   Venue for a copyright claim, inclusive of the breach of agreement claims is governed by <u>Milwaukee Concrete Studios v. Fjeld Mfg. Co., supra</u>, and 28 U.S.C. Section 1400(a), under which venue is proper where defendant "resides or may be found." This standard is not restrictive. A corporation or an LLC may be found where it is doing business (<u>Time Inc. v. Manning</u>, 366 F.2d 690, 697-8 (5th Cir., 1966). Thus, <u>PDK Labs Inc. v. Friedlander</u>, 103 F.3d 1105 is factually

inapplicable.   The U.S. Court of Appeals' decision in <u>Time, Inc. v. Manning</u>, supra, absolutely devastates defendants' argument as to absence of personal jurisdiction and as to venue.   The Joint Venture, Benefits Essentials, earned substantial income from subscribers in New York.   Regarding exercising jurisdiction *in personam* over a foreign Entity, the Court cited <u>Buckley v. Beaumont Enterprise</u>, stating the rule as follows:

[T]he cause of action need only be a part of the chain of activity which created the "minimum contacts," or, that the particular activity which gave rise to the cause of action need only be a natural result of the general business activity of the foreign corporation within the State.   232 F.Supp. 986, 988.

Accordingly, the Court applied the statute to a libel action against a foreign corporation whose business activities within the state consisted only of the distribution of newspapers there.

Moreover, the Court in <u>Time, Inc. v. Manning</u>, supra, stated that

Here Time engaged in all of these activities to a significant extent.   Its circulation was wide, it regularly solicited subscriptions, and it maintained editorial stringers. By coming into the state to engage in these activities, Time reaped substantial economic benefits from the state and took advantage of the protections offered by the law of Louisina [emphasis added]

Defendant, ASC, was clearly "doing business," in New York, reaped substantial economic benefits from the state and had sufficient nexus and contacts and  conducted "business activity" in New York so as to warrant venue in this Court.

A Rule 12(b) motion must be read in conjunction with Rule 8(a) which requires a short and plain statement showing that the pleader is entitled to relief.

The United States Supreme Court has established that "Rule 8(a)'s simplified pleading standard" is controlling in all cases and any judicially created "heightened pleading" requirement is invalid (Swierkiewicz, 534 U.S. 506, 122 S. Ct. at 998-9).

The above stated criteria (Time Inc. v. Manning, supra) applies to the transaction of the business of the Joint Venture, Benefits Essentials, with regard to its numerous New York subscribers. Defendants' contentions of "no contact" are totally erroneous. Quite the contrary, defendants performed wrongful acts and otherwise purposely availed themselves of the privilege of conducting business in this forum. Purposeful availment occurs where, as here, "the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state."

See, e.g. Bancroft &. Masters Inc. v. Augusta National Inc., 223 F.3d 1082, 1087 (9th Cir., 2000).

Thus, Hutton v. Piepgras, 451 F.Supp. 205, 206 (SDNY, 1978), Kreps v Reiner, 414 F.Supp. 2d 403, 405 (SDNY 2006) and International Shoe v. Washington, 326 U.S. 310, 66 S.Ct. 154 (1945) are factually inapplicable.

Not one of the cases defendants cite involve the Copyright Act of 1909, and sufficiently comply with the Rule 8(a) criteria of <u>Leatherman, supra</u>, as the copyright materials pleaded are on the on-line library of Martin Censor generated by his efforts and expertise over many years prior to the execution of the Joint Venture Agreement.  This was Martin Censor's role in the Joint Venture and his intellectual property was never assigned to the Joint Venture.  Thus, "the question boils down to whether or not defendant has fair notice of the allegations against it"(See <u>Leatherman</u>, 507 U.S. at 168, 113 S. Ct. 1160).

<u>McNellis v. American Box Board Co.</u>, 53 Misc.2d 479, 278 N.Y.S.2d 771, 776, is significant only because it contains defendants' admission of the "execution of a contract in New York."  It is factually inapplicable because such execution of a contract is not the sole basis of jurisdiction as has beem amply demonstrated by all of the foregoing.

<u>Bensusan Restaurant Corp. v. King</u>, 126 F.3d 25, is inapplicable because it pertains to a Missouri defendant wherein plaintiff made a claim of trademark infringement under the Lanham Act and Federal Trademark Dilution Act. Defendant placed an internet advertisement for a cabaret bearing the same name as plaintiff's New York cabaret.  Here, quite to the contrary, defendants transacted business in New York by Benefits Essentials, the Joint Venture, selling subscriptions to Martin Censor's on-line library.

by his efforts and expertise over many years prior to the execution of the Joint Venture Agreement. This was Martin Censor's role in the Joint Venture and his intellectual property was never assigned to the Joint Venture. Thus, "the question boils down to whether or not defendant has fair notice of the allegations against it"(See Leatherman, 507 U.S. at 168, 113 S. Ct. 1160).

McNellis v. American Box Board Co., 53 Misc.2d 479, 278 N.Y.S.2d 771, 776, is significant only because it contains defendants' admission of the "execution of a contract in New York." It is factually inapplicable because such execution of a contract is not the sole basis of jurisdiction as has beem amply demonstrated by all of the foregoing.

Bensusan Restaurant Corp. v. King, 126 F.3d 25, is inapplicable because it pertains to a Missouri defendant wherein plaintiff made a claim of trademark infringement under the Lanham Act and Federal Trademark Dilution Act. Defendant placed an internet advertisement for a cabaret bearing the same name as plaintiff's New York cabaret. Here, quite to the contrary, defendants transacted business in New York by Benefits Essentials, the Joint Venture, selling subscriptions to Martin Censor's on-line library.

Similarly, American Edelstaal Inc. v. Maier, 460 F. Supp. 613, is factually inapplicable. Defendants' actions were previously discussed with regard to Bancroft & Masters Inc. v. Augusta National Inc., supra, which established the

criteria that defendants performed wrongful acts and otherwise purposely availed themselves of the privilege of conducting business in this forum. Purposeful availment occurs where, as here, "the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state" (Bancroft, supra, 223 F.2d 1082, 1087).

A prima facie case of personal jurisdiction is established by the Complaint, taken as a whole, with respect to the criteria of Bancroft, supra, as well as a case cited by defendants' Memorandum, Blakeman v. The Walt Disney Co., citing U.S. Supreme Court precedent. The criteria is that the defendants performed wrongful acts and purposely availed themselves of the privilege of conducting business in this forum. Purposeful availment occurs where, as here, "the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom defendant knows to be a resident of the forum state" (Bancroft, supra, 223 F.2d 1082, 1087).

Proper venue in this court is further evident from the fact that there were numerous New York subscribers generated by the Joint Venture, the income of whom and which were withheld tortiously from plaintiff, Martin Censor. Therefore, defendants' citation of P.I., Inc. v. Quality Products, Inc., 907 F.Supp. 752, 758-59 (S.D.N.Y. 1955), is inapplicable.

The venue Defendants' argument and any statutory citations or case citations are also inapplicable for reasons previously stated. Nothing occurred in

Connecticut at or about the time the Joint Venture Agreement was signed, and defendants' specious argument of venue being governed by an agreement is simply wrong. As to defendants' claim of an agreement having "Connecticut" language, the agreement simply reads:

> "This Agreement shall be construed and enforced under the laws of the State of Connecticut."

The title of this purported clause is not part of the substantive agreement, a basic concept of law which is irrefutable.  Thus, Cheney v. IPD Analytics, LLC, 583 F.Supp. 2d 108, 126 (D.D.C. 2008), is inapplicable, as is Beatie & Osborn, LLP v. Patriot Corp., 431 F.Supp.2d 367, 395 (S.D.N.Y. 2003).

As to the allegations of fraud and case citations as well as statute, the arguments are here inapplicable because, by the pleading of plaintiff's Complaint, it is absolutely clear that Thomas Ceconi and Lillian Shapiro acted in concert in seeking to have their Limited Liability Company ASC withdraw from the Joint Venture. Moreover, the fact is that the day before doing so, the defendant "HR 360, Inc." was formed, as is documented by an exhibit to plaintiff's Complaint. Lillian Shapiro and Thomas Ceconi are the principals of HR 360, Inc. Furthermore, although there being no wind up, accounting or legal transfer for assets, an e-mail to all subscribers of Benefits Essentials in December of 2010, stated that everything that was Benefits Essentials is now HR 360, Inc. This email is an Exhibit to Plaintiff's complaint.

The United States Supreme Court has decisively addressed defendants'
argument as to a higher standard of pleading specificity in Swierkiewicz, 34 U.S.
506, 122 S.Ct., at 998-9, stating that in all cases the judicially created "heightened
pleading" requirement is invalid.   All of the foregoing requires discovery and
depositions.   Prior to such discovery and depositions, no further specifics are
possible because, as the Complaint states, the actions of Shapiro and Ceconi were
"clandestine."   There is no case imaginable that more specifically needs to rely
upon Swierkiewicz, supra, mandating rejection of this argument defendants make
as to specifics.   The citations of case law with regard to copyright infringement
claims are inapplicable because they do not pertain to the Copyright Act of 1909.
The cases cited with regard to the pleading of breach of contract not being facially
plausible are inapplicable because the purported dissolution and blatant conversion
of the assets and income of Benefits Essentials was not valid as required by
winding up and accounting.   This is the essence of the breach of agreement cause
of action.

The case law cited by defendants with regard to breach of fiduciary duty is
inapplicable because the duty of "highest level of fiduciary duty" continues after
the claim of withdrawal because during the winding up and accounting period,
theft and conversion of the income, properties, and subscribers and conversation to
HR 360 Inc. established a violation of the fiduciary duty.   It is blatantly untrue, as a

matter of law stating, stating that any and all fiduciary duties ceased on the date of the withdrawal letter. A Joint Venture is subject to the same rules concerning <u>termination</u> as a partnership. The key word is "termination," not "dissolution" or "withdrawal." The Joint Venture may be terminated by mutual consent; here it was not. Where it is claimed that a Joint Venture is dissolved, the partners are entitled to distribution of its profits; but this did not occur. Termination or dissolution, whichever defendants seek to prove, is not termination of liability. That can only occur between joint venturers upon a complete and accurate accounting.

A Joint Venture, however, continues to exist for the purpose of winding up claims and obligations. Thus, the only manner in which a Joint Venture can be wound up is through an accounting. The case law is absolutely clear on this issue. Although a partner's duties to his copartners may be relaxed in a relationship that looks to the future, a partner's duty of good faith and full disclosure continues as to dealings affecting the winding up of the partnership and the proper preservation of partnership assets during that period. See, e.g. <u>Lavin v. Ehrlich</u>, 80 Misc.2d 247, 249, 363 N.Y.S.2d 50, 5 (Sup. Ct. Nassau Co., 1974); <u>Hamilton Co. v. Hamilton Tile Corp.</u>, 23 Misc. 2d 589, 591, 197 N.Y.S.2d 384, 386 (Sup. Ct. N.Y. Co. 1960). The withdrawing partner still owes the other partner the duty to act in good faith in

winding down the business affairs and cannot conduct the winding down process so as to cause loss to the other party or theft of the assets of the Venture.

An accounting is more than a profit and loss statement and an accounting must consider the value of the assets which each partner brought to the partnership. The basic premise that the only manner in which a Joint Venture can be wound up is through an accounting is found in New York Partnership Law §§ 44 and 74, as well as a U.S. District Court case Margate Industries, Inc. v. Samincorp, Inc., 582 F.Supp 611, 620 (S.D.N.Y., 1984). Breach of a partner's duty of good faith by the manner in which he or she wound down the affairs of the partnership is intolerable. If one partner betrays his trust and converts the property of the partner or joint venturer, he incurs the usual liability that one partner incurs to another respecting partnership or joint venture affairs, namely, to be held liable in an accounting. The only manner in which indefensible appropriation can be punished is by an accounting in which the respective rights of each party can be determined and the wrongdoer brought to justice.

**CONCLUSION**

For the foregoing reasons, plaintiff, MARTIN CENSOR, respectfully requests that the Court deny all relief requested with regard to dismissal of the Complaint, and with regard to a change of venue.  In the event the Court does determine that one or more causes of action, as pleaded, warrant dismissal of the Complaint, or that an issue of personal jurisdiction warrants change of venue, plaintiff, MARTIN CENSOR, respectfully requests that the Court grant to plaintiff, by his attorneys, a period of thirty (30) days within which to amend the Complaint.

Respectfully submitted,

KOVEN & KRAUSZ

By: _____
Stephen Dickerman, of counsel (SD 2773)
Attorneys for Plaintiff
358 Fifth Avenue,  Suite 301
New York, NY 10001
Telephone:  (212) 736-7432
Facsimile:  (212) 967-2755
E-mail:  mkrauszesq@aol.com

Litigation\Censor v ASC-Memo of Law-3-21-11

Appendix to Plaintiff's Memorandum of Law

A- Court Transmission Stating Basis of Jurisdiction To Be Diversity.

B- Joint Venture Agreement, which is Exhibit to Plaintiff's Verified Complaint.

C- Plaintiff's Verified Complaint.

# EXHIBIT A

From: ecf_bounces@nyed.uscourts.gov
To: nobody@nyed.uscourts.gov
Subject: Activity in Case 1:11-cv-00571-JBW -RLM Censor v. ASC Technologies of Connecticut, LLC et al Complaint
Date: Mon, Feb 7, 2011 2:32 pm

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

### U.S. District Court

### Eastern District of New York

## Notice of Electronic Filing

The following transaction was entered on 2/7/2011 at 2:30 PM EST and filed on 2/4/2011

**Case Name:**        Censor v. ASC Technologies of Connecticut, LLC et al

---

JS 44 (Rev. 12/07)   Case 1:11-cv-00571-JBW-RLM   Document 1-1   Filed 02/04/11   Page 1 of 2

**CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS** MARTIN CENSOR

**DEFENDANTS** ASC Technologies of Connecticut LLC, LILLIAN SHAPIRO, THOMAS CECONI, HR 360 INC. AND "JOHN Does AND JANE DOES"

**(b)** County of Residence of First Listed Plaintiff Queens
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant State of Connecticut
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
KAVEN & KRAUSZ, 358 FIFTH AVE.
NEW YORK N.Y. 10001

Attorneys (If Known)

**CV11 - 0571**

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

| | | | |
|---|---|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) | | |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity (Indicate Citizenship of Parties in Item III) | | |

WEINSTEIN, J.
MANN, M.J.

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**Document description:** Civil Cover Sheet
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP NYEDStamp_ID=875559751 [Date=2/7/2011] [FileNumber=5810412-1] [
b6ecc7cb540be64fcdc4baebe71d55a741a23190e0862566f2846a951835de8f2ec5bc
0b314394709621b2ea4f6138074944cf70ac4e1e0f516141e2c2564157]]

# EXHIBIT B

Benefits Essentials

# JOINT VENTURE AGREEMENT

THIS JOINT VENTURE AGREEMENT ("Agreement"), made and entered into as of this day of April 11, 2003, by and between Martin Censor of T.P. Press ("Censor") and ASC Technologies of CT, LLC ("ASC").

## ARTICLE I - GENERAL PROVISIONS

**Business Purpose.** The business of the Joint Venture shall be as follows: To develop and market the website known as Benefits Essentials (www.BenefitsEssentials.com).

**Term of the Agreement** This Joint Venture shall commence on the date first above written and shall continue in existence until terminated, liquidated, or dissolved by law or as hereinafter provided.

## ARTICLE II - OBLIGATIONS OF THE JOINT VENTURERS

All parties share equally in the operations and decisions of the Joint Venture. The parties agree to a split of duties between themselves as follows:

Martin Censor is primarily responsible for updating the content.

ASC is primarily responsible for marketing and technology (i.e., site development and maintenance). ASC will host the site on its servers and/or at its expense.

## ARTICLE III - ALLOCATIONS

**Profits and Losses.** Any income or loss of the Joint Venture for federal income tax purposes determined by the Joint Venture's fiscal year, including, without limitation, each item of Partnership income, gain, loss or deduction.

Commencing on the date hereof and ending on the termination of the business of the Joint Venture, all profits, losses and other allocations to the Joint Venture shall be allocated quarterly, as follows: Fifty percent (50%) to ASC and fifty percent (50%) to Censor. In the event of the sale of the partnership, Censor will receive 50% of the sale price and ASC will receive 50% of the sale price.

## ARTICLE IV - RIGHTS AND DUTIES OF THE JOINT VENTURERS

**Other Business of the Parties to this Agreement.** The parties to this Agreement and their respective Affiliates may have interests in businesses other than the Joint Venture business. The Joint Venture shall not have the right to the income or proceeds derived from such other business interests. The parties stipulate that Censor is the sole owner of the copyright to the site content; Censor shall retain such rights during the life of this venture and in the event of termination or dissolution of the venture.

The Partnership shall have the exclusive rights to content on the web for the life of the venture. Censor cannot use any content from the site for any other ventures unless agreed to in writing by ASC which competes with Benefits Essentials. Censor may use portions of the content for articles and the like in other publications that do not compete with BenefitsEssentials.

## ARTICLE V - INDEMNIFICATION OF THE JOINT VENTURERS

The parties to this Agreement shall have no liability to the other for any loss suffered which arises out of any action or inaction if, in good faith, it is determined that such course of conduct was in the best interests of the Joint Venture and such course of conduct did not constitute negligence or misconduct. Censor indemnifies ASC against any copyright infringements which may occur related to any content on the BE site. ASC shall cooperate with and provide Censor with any documentation necessary to defend any such action against third parties.

## ARTICLE VI - DISSOLUTION

The Joint Venture shall be dissolved upon the happening of any of the following events: (a) The adjudication of bankruptcy, filing of a petition pursuant to a Chapter of the Federal Bankruptcy Act, withdrawal, removal or insolvency of either of the parties. *(b)* The sale or other disposition, not including an exchange of all, or substantially all, of the Joint Venture assets. (C) Mutual agreement of the parties. Upon dissolution, other than the sale of the partnership including the partnership property (BenefitsEssentials), the parties agree that the content of BenefitsEssentials shall remain the property of Censor.

## ARTICLE VII - MISCELLANEOUS PROVISIONS

**Books and Records.** The Joint Venture shall keep adequate books and records at its place of business, setting forth a true and accurate account of all business transactions arising out of and in connection with the conduct of the Joint Venture.

**Validity.** In the event that any provision of this Agreement shall be held to be invalid, the same shall not affect in any respect whatsoever the validity of the remainder of this Agreement.

**Integrated Agreement.** This Agreement constitutes the entire understanding and agreement among the parties hereto with respect to the subject matter hereof, and there are no agreements, understandings, restrictions or warranties among the parties other than those set forth herein provided for.

**Headings.** The headings, titles and subtitles used in this Agreement are for ease of reference only and shall not control or affect the meaning or construction of any provision hereof.

**Notices.** Except as may be otherwise specifically provided in this Agreement, all notices required or permitted hereunder shall be in writing and shall be deemed to be delivered when deposited in the United States mail, postage prepaid, certified or registered mail, return receipt requested, addressed to the parties at their respective addresses set forth in this Agreement or at such other addresses as may be subsequently specified by written notice.

**Applicable Law and Venue.** This Agreement shall be construed and enforced under the laws of the State of New York.

**Other Instruments.** The parties hereto covenant and agree that they will execute each such other and further instruments and documents as are or may become reasonably necessary or convenient to effectuate and carry out the purposes of this Agreement.

This agreement is binding upon the heirs, court appointed representatives, assigns, and successors of the parties.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

So agreed and executed this /4th , day of _April_ , 2003.

Martin A. Censor

Lillian Shapiro
ASC Technologies of CT, LLC

# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X

MARTIN CENSOR

Plaintiff

-against-

ASC TECHNOLOGIES OF CONNECTICUT, LLC.,
LILLIAN SHAPIRO, THOMAS CECONI, HR 360, INC., and
JOHN DOES and JANE DOES "1" through "5," plaintiff's
intention being to include all individuals and entities who
may be associated with, or financially interested, directly
or indirectly, in the business of, or sale of, the business of
ASC TECHNOLOGIES OF CONNECTICUT, LLC
and/or BENEFITS ESSENTIALS and/or any entity bearing
the ASC name,

Defendants

-------------------------------------------------------------X

**COMPLAINT**
DOCKET No.
2011

CV-11-0571

**Jury Trial Demanded**

WEINSTEIN, J.
MANN. M.J.

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★   FEB 0 4 2011   ★
BROOKLYN OFFICE

Plaintiff, by his attorneys, KOVEN & KRAUSZ, respectfully sets forth his

Complaint against the Defendants, ASC TECHNOLOGIES OF CONNECTICUT LLC., HR 360

INC., LILLIAN SHAPIRO, THOMAS CECONI , HR 360 INC., and "JOHN DOES AND JANE

DOES "1" through "5"…" and such state law provisions implicating pendent jurisdiction, and

case law, state and federal , applicable hereto, as follows:

### INTRODUCTORY STATEMENT PURSUANT TO RULE 8
### OF THE FEDERAL RULES OF CIVIL PROCEDURE

1.      Plaintiff alleges that his claims relate to Martin Censor's (hereinafter sometimes

referred to as "CENSOR") expertise and intellectual property rights, arising from his having

written, acquired, developed, and marketed publications and materials, over a number of years

prior to April 11, 2003, which ultimately became the basis for an on-line publication called

"Benefits Essentials," which is based upon CENSOR's materials copyrighted on original

proprietary works.

2.      CENSOR is now, and at all times mentioned in this Complaint, and at all times relevant hereto was, a resident of and maintained his principal place of business in the State of New York, County of Queens, at 141-05 68th Drive, Flushing, New York 11367, within the territorial jurisdiction of this Court.

3.      At all times relevant hereto, CENSOR acquired his learning and expertise in the aforesaid intellectual property matters, and wrote, acquired, developed, and marketed publications and  materials, as aforesaid , over a number of years prior to April 11, 2003, at various locations in the County of Queens, City and State of New York, including but not limited to 141-05 68th Drive, Flushing, New York 11367.

4.      Defendants, and each of them, now and at all times mentioned in this complaint, and at all times relevant hereto, resided in and/or maintained or established his, her, or its principal place of business, in the State of Connecticut.

5.      Upon  information  and  belief,  Defendant,  ASC  TECHNOLOGIES  OF CONNECTICUT, LLC ("ASC"), was and is a limited liability company of the State of Connecticut, and at all times relevant hereto, maintained and still maintains its principal place of business at 400 Main Street, Suite 410, Stamford, Connecticut, and previously maintained an office at 159 Main Street, Stamford, Connecticut and One Dock Street, Stamford, Connecticut.

6. Upon information and belief, Defendant, HR 360 INC., was and is a Connecticut corporation established on or about December 9, 2010, and when established, registered a business address at 100 Main Street, Suite 410, Stamford, Connecticut. Upon information and belief, said defendant now maintains its principal place of business at 400 Main Street, Suite 410, Stamford, Connecticut, which is also the place of business of ASC.

7.    Upon information and belief, Defendant, LILLIAN SHAPIRO, at all times relevant hereto was and still is a member of ASC , maintaining her principal place of business at the aforesaid addresses of ASC .

8.    Upon information and belief, Defendant, THOMAS CECONI, at all times relevant hereto, has maintained his principal place of business at the aforesaid premises of ASC , and the registered business address of Defendant, HR 360, INC., whose website, www.hr360.com, ASC specifies 400 Main Street, Suite 410, Stamford, Connecticut, and for which THOMAS CECONI is registered as agent with the State of Connecticut.

9.    This Court has jurisdiction pursuant to Sections 1332 (diversity of citizenship) of the Judicial Code (28 U.S.C.A. Sec. 1332 ). Venue is conferred, for this U.S. District of the Eastern District of New York, pursuant to Plaintiff's principal place of business in the County of Queens, City and State of New York. ( 28 U.S. Code Section 1391(a) ).

10.    The defendants named herein as "JOHN DOES  and JANE DOES "1" THROUGH "5" are such individuals and entities whose names are unknown to plaintiff and whom or which plaintiff intends to encompass those who may be associated with or financially interested, directly or indirectly, in the business of and/or sale of the business of ASC  and/or "Benefits Essentials," and/or any entity bearing the ASC name.

11.    At all times relevant hereto, and for a substantial period of time prior to April 11, 2003, "Benefits Essentials" was marketed to individuals and entities interested in the laws and regulations affecting employee benefits and employment law, and sales of Benefits Essentials were, and still are, in the form of annual subscriptions to an on-line library.

12.    On April 11, 2003, CENSOR as copyright owner of the valuable intellectual property rights referred to above entered into a Joint Venture agreement with ASC (the Joint

3

Venture Agreement), a copy of which is annexed hereto as EXHIBIT "A"). At that time, CENSOR preserved his rights as copyright owner and undertook responsibility for updating the content of the aforesaid intellectual property, while ASC undertook the responsibility for marketing and technology, namely site development, maintenance, and what is referred to in the computer industry as "hosting the site," on its servers and/or at its expense.

13.     By a devious and unlawful plan and scheme, as more fully set forth in the first two counts in this Complaint, Defendants and each of them have engaged in diversion and disposal of the assets of the Joint Venture, including the use of the copyrighted materials and development thereof, THOMAS CECONI and LILLIAN SHAPIRO specifically asserting that dissolution has occurred, on or about December 17, 2010. THOMAS CECONI and LILLIAN SHAPIRO asserted that all of the business of the Joint Venture would now be run or operated by HR 360 INC. by on or about January 28, 2011. Defendants and each of them have engaged in other egregious unlawful activities, as detailed in the first three counts of this Complaint. The intent of Defendants and each of them, and the effect of intended dissolution is to exclude CENSOR from income to which he is entitled by the Joint Venture Agreement and depriving him of all income and ownership to which he is entitled under the Joint Venture Agreement.

14     By reason of all of the foregoing, CENSOR demands the sum of FIVE MILLION ($5,000,000.00) DOLLARS, in compensatory damages, or such other sum as the Court shall determine, as well as punitive damages, and attorneys' fees, all of which is subject to applicable law in the instruction of the U.S. District Judge to the jury empaneled in this matter, plus such interest, costs, and disbursements.

4

## AS AND FOR A FIRST COUNT

15.     Plaintiff repeats, reiterates and realleges each and every allegation of the foregoing paragraphs numbered "1" through "14" inclusive as if more fully set forth verbatim hereat.

16.     This action is brought under federal copyright statutes, involving what is generally referred to as common law copyright.

17.     The statutes involved are the Copyright Act of 1976, as amended, and/or the Copyright Act of 1909, as amended.

18.     Pursuant to the Copyright Act of 1909, CENSOR, as copyright owner, is protected in his ownership of intellectual property for a period of fifty (50) years, and is entitled under the foregoing facts and circumstances to the exclusive rights, amongst others, to print, reprint, publish, copy, and sell the copyright works, and sets forth damages and injunctive rights. Section 204 thereof specifies the need for the copyright owner to agree to a written conveyance for transfer of copyright ownership.

19.     The Copyright Act of 1976, as amended, similarly protects the rights of the copyright owner, CENSOR , under these facts and circumstances, and provides for damages and injunctive relief.

20.     Prior to April 11, 2003, CENSOR, who then was, and ever since has been, a citizen and domiciliary of the United States, created, wrote, developed, and marketed publications and materials, which ultimately became the basis of the aforesaid on-line publication called "Benefits Essentials" based on his copyright on original proprietary works.

21.     These publications and materials, which were used in the course of the business of the Joint Venture, pursuant to agreement described in "COUNT TWO" herein,

were created by CENSOR's own skill, labor and judgment, and is copyrightable subject matter under the laws of the United States.

22.     Since April 11, 2003, CENSOR has maintained his rights, generally referred to as "common law copyright," in the on-line publication called "Benefits Essentials" which has been published or disseminated pursuant to the aforesaid on-line business of the Joint Venture, under his authority subject to the limitations, conditions, covenants and warranties of ASC in the Joint Venture Agreement described in "COUNT TWO" herein.

23.     Since April 11, 2003, CENSOR has been and still is the sole proprietor of all right, title, and interest in and to the on-line publication called "Benefits Essentials."

24.     Since April 11, 2003, Defendants and each of them have infringed upon the above mentioned copyright by consistently and frequently diminishing the income and distribution of the fifty percent share of CENSOR in the profits of the Joint Venture, diverting and disposing of the assets of the Joint Venture for use of ASC's other businesses, including but not limited to ASC TECHNOLOGIES INC., for the personal benefit of THOMAS CECONI and/or LILLIANSHAPIRO:

(a) There is annexed hereto as Exhibit "B" the Email of LILLIAN SHAPIRO, to CENSOR, specifying that the share of CENSOR in the JOINT VENTURE was diminished from 50% to 35%, and that she and THOMAS CECONI were taking an additional 15%.

(b) There is annexed hereto as Exhibit "C" a communication from THOMAS CECONI specifying that expenses were to be increased by the hiring of an editor at $50,000.00 per year;

6

(c) There is annexed hereto as Exhibit "D" a copy of the letter from ASC's attorney confirming the scheduling of a Mediation Hearing to resolve all issues.

25.     Thereafter, the Mediation was arbitrarily and unilaterally cancelled by ASC by letter of THOMAS CECONI, dated December 10, 2010, which occurred at or about the time of the pending negotiations for the sale of the Joint Venture, and stated that the Joint Venture was unilaterally terminated.  A copy of this letter is annexed as Exhibit "E." The purported termination is unlawful.

26.     Unilateral termination of the Joint Venture is unlawful without an accounting having first occurred.  The purported dissolution by the aforesaid letter occurred the day after the incorporation of HR 360 INC. (Exhibit "F"), stating the effective date of the purported dissolution to be December 17, 2010, and purporting to exclude CENSOR from the income of the business of "Benefits Essentials," and conveying all assets of the Joint Venture for operation of "Benefits Essentials" to HR 360 INC. Additionally, THOMAS CECONI and LILLIAN SHAPIRO , by email notification to CENSOR, and to many if not all of the customers of the Joint Venture, announced that as of January 28, 2011, the business of "Benefits Essentials" would be operated exclusively by HR 360 INC. A copy of the email dated December 31, 2010 is annexed as Exhibit "G."

27.     Upon information and belief, defendants and each of them has infringed the copyright of CENSOR, and/or threatens to do so by and through HR 360 INC., and continues to do so.

28.     Upon information and belief, HR 360 INC. was incorporated December 9, 2010, designating THOMAS CECONI as its agent.

7

29.     CENSOR has notified Defendants' principal representative, THOMAS CECONI, that ASC, and by implication, all individuals and entities associated with ASC, have infringed the copyright of CENSOR, and Defendant ASC has continued to infringe the copyright. A copy of CENSOR's letter of December 16, 2010 is annexed as Exhibit "H."

30.     After December 17, 2010, and continuously through the present date, defendants ASC, CECONI and SHAPIRO have been deriving income by publishing on-line, selling and otherwise marketing "Benefits Essentials," by and through ASC, and/or acting in concert with ASC. Defendants and each of them have thus been engaged in unfair trade practices, and unfair competition against CENSOR, to CENSOR's irreparable damage, which cannot be adequately calculated or compensated in monetary damages.

31.     Accordingly, CENSOR seeks an Order of this Court, and/or entry of Declaratory Judgment, that CENSOR is the 50% owner of all assets of the Joint Venture transferred to HR 360 INC.

32.     CENSOR also seeks an Order of this Court and/or entry of Declaratory Judgment prohibiting dissolution of the Joint Venture until there has been compliance by the defendants and each of them with all applicable laws, state and federal, including but not limited to a complete accounting of any and all aspects of the fiduciary relationship as defined in the COUNT THREE herein, and in applicable case law of the U.S. District Court; which is a condition precedent to dissolution of a Joint Venture.

33.     Additionally, CENSOR seeks an Order of this Court, and/or entry of Judgment, specifying the damages of CENSOR to be paid by Defendants and each of

them, jointly and severally, up to and including the date of the purported dissolution, viz. December 17, 2010, and furthermore in consequence of Defendants' infringement of CENSOR's copyright, and defendants' unfair trade practices and unfair competition, an accounting.

(a)     all gains, profits, and advantages derived by defendants and each of them through any and all of the foregoing , including but not limited to such unfair trade practices and unfair competition, and

(b) all gains, profits, and advantages, derived by defendants and each of them through infringement of CENSOR's copyright, and/or such damages as to this Court shall appear just, proper and equitable.

## AS AND FOR A SECOND COUNT

34.     Plaintiff repeats, reiterates, and realleges each and every sworn statement set forth above in the foregoing paragraphs, designated "1" through "33" inclusive, as if fully set forth verbatim hereat.

35.     By reason of the foregoing, Defendant ASC is in breach of the Joint Venture Agreement

36.     The effective date of such breach was December 17, 2010, notwithstanding the fact that there were prior violations of the aforesaid Joint Venture Agreement by Defendants, ASC, LILLIAN SHAPIRO and THOMAS CECONI:

(a)    This date of breach is documented by Defendant ASC's letter of December 10, 2010 (EXHIBIT "E"), and the incorporation by or on behalf of THOMAS CECONI of HR 360 INC. on December 9, 2010 (EXHIBIT "F"), and the following documented or irrefutable facts.

9

(b)   The aforesaid letter of December 10, 2010 states that the date of dissolution is  December 17, 2010, despite there being no proper and complete accounting prior thereto .

(c)   The date of incorporation of HR 360 INC., December 9, 2010, is documented by State of Connecticut records (EXHIBIT "F"), stating amongst other facts that THOMAS CECONI is the registered agent.

(d)   The email of December 31, 2010 (Exhibit "G") of THOMAS CECONI to CENSOR, entitled "Announcement about the HR & Benefits Library," states amongst other admissions of facts material to liability of defendants and/or one or more of them:

"We have created an entirely new, comprehensive online HR library website…"

"ASC will be supporting HR & Benefits through January 28, 2011.

HR 360 is prepared to assume responsibility for and fulfill the remainder of your subscription…"

**which is a joint venture asset.**

37.   On the 11th day of April, 2003, CENSOR entered into the Agreement with ASC as aforesaid (Exhibit "A") wherein ASC undertook responsibility for developing, maintaining, and hosting the web-site on it own service and/or  at its expense, while CENSOR retained responsibility for up-dating the content.

38.   Substantial income was derived by CENSOR from the Joint Venture, by distribution characterized as "royalties," over a period of time, until sometime in either 2007 or 2008, the exact date unknown to CENSOR,  and at or about that time, CENSOR's income from the Joint Venture began to decrease dramatically. At or about that time, ASC's affiliated entity, believed to be a corporation registered under the name of ASC TECHNOLOGIES, INC., of which THOMAS CECONI was President and Treasurer,

experienced a loss of business and loss of income, and as CENSOR later learned, ASC began using the revenues of the Joint Venture to pay for many of the expenses of ASC TECHNOLOGIES, INC.

39. Such diversion of Joint Venture income is in violation of ASC's contractual obligation to "host the site on its servers and/or at its expense."

40. The essential terms of the Joint Venture Agreement which are relevant to CENSOR's allegation herein, and his request for the various aspects of relief are as follows:

( a ) **"OBLIGATIONS OF THE JOINT VENTURERS"**

**"All parties share equally in the operations and decisions of the Joint Venture. The parties agree to a split of duties between themselves as follows:**

**MARTIN CENSOR is primarily responsible for updating the content.**

**ASC is primarily responsible for marketing and technology (i.e., site development and maintenance). ASC will host the site on its servers and/or at its expense."**

41. Upon information and belief, at the same time Defendant ASC was negotiating for the sale of the Joint Venture and its assets to a third party, had received an offer in excess of One Million ($1,000,000.00) Dollars, was seeking mediation with CENSOR as to possible voluntary dissolution and his share of income, the mediation request made by Defendant ASC's attorney, was abruptly withdrawn by said attorney, following the day when HR 360 INC. was incorporated.

42. Pursuant to the Joint Venture Agreement, CENSOR was to be paid 50% of the sales price.

43. Pursuant to the Joint Venture Agreement, CENSOR has updated content pursuant to his expertise.

44. Defendant ASC is in breach of the Joint Venture Agreement in that:

(a)    CENSOR has not been paid his proper share of income from the Joint Venture for a substantial period of time;

(b)    Defendant ASC has diverted revenues of the Joint Venture to pay unauthorized expenses of ASC TECHNOLOGIES OF CONNECTICUT, LLC, and to pay expenses of ASC TECHNOLOGIES, INC., and to increase income to THOMAS CECONI and LILLIAN SHAPIRO;

(c)    Defendant ASC unlawfully terminated the business of the Joint Venture, thus excluding CENSOR from the business income and revenue from sale thereof at a time when such sale was being negotiated, without CENSOR's participation in such sales negotiations and decisions, in violation of ARTICLE II of the Joint Venture Agreement.

45.    By reason of all of the foregoing, CENSOR seeks damages, and a full and complete accounting as aforesaid, and as more fully set forth in the various COUNTS of this Complaint, and the Wherefore clause hereof.

## AS AND FOR A THIRD COUNT

46. CENSOR repeats reiterates and realleges each and every allegation of the foregoing paragraphs, numbered "1" through "45" inclusive, as if more fully set forth verbatim hereat.

47. Pursuant to the terms of the Joint Venture Agreement, CENSOR was and still is entitled to a 50% distribution of all income of the Joint Venture, and has duly demanded a full and complete accounting.

48. The U.S. District Court in this State, and other states, has determined as a matter of law, that the entitlement to an accounting as between partners in a joint venture to the

12

partner who has been deprived of his livelihood and to his monetary rights pursuant to the Joint Venture Agreement, involves far more extensive disclosures, records, and court considerations than mere calculations by an accountant from profit and loss statements, but in fact encompasses the following factors:

(a) the equitable remedy of an accounting to remedy all of the alleged wrongs suffered by the Plaintiff;

(b) A joint venture or partnership, the rules of law being substantially the same, is not terminated by a claim of dissolution but continues until the winding up of joint venture business affairs;

(c) Co-joint venturers, like copartners, owe to one another the highest level of fiduciary duty, as CHIEF JUSTICE CARDOZO stated in the landmark case of <u>Meinhard v. Salmon,</u> 249 N.Y. 458, 463-4; 164 N.E. 545, 546 ; 1928, a duty of finest loyalty and honesty;

(d) A partner or joint venturer is called to account for any breach of duty to his co-joint venturer that deprived him of his interests in the Joint Venture assets;

(e) A distinguishing feature of equity is the application of settled rules to unusual conditions, and the molding of its decrees so as to do equity between the parties;

(f) Strict adherence to the rule of undivided loyalty has been insisted upon by the Courts without exception;

(g) Punitive damages are appropriate where the conduct of the co-joint adventurer unilaterally declared dissolution without an accounting. It is reprehensible. Therefore, punitive damages for indefensible appropriation can only occur by an accounting in which the respective rights of each party can be determined and the wrongdoer brought to justice.

13

49.  As a co-joint venturer, Defendant ASC is a fiduciary of CENSOR, who as copyright owner, and the expert upon whose work the Joint Venture was predicated, reposed his trust and confidence in ASC, THOMAS CECONI and LILLIAN SHAPIRO, for the proper fulfillment of their duties, as part of the management of Joint Venture affairs. These defendants owed CENSOR, and still owe CENSOR a high degree of loyalty, fidelity, and fair dealing in their conduct regarding the Joint Venture.

50.  Since the Joint Venture became profitable, these defendants, ASC and THOMAS CECONI and LILLIAN SHAPIRO initially instituted and operated upon a policy of making 50% (of monthly income) monthly distribution and payment to CENSOR, only to dramatically change the course of business, from distributions pursuant to the Joint Venture Agreement, to diversion of assets to their business entities, and a deceitful increase of personal income and expenses, in violation of the Joint Venture Agreement.

51.  The aforesaid defendants have wrongfully made distributions to CENSOR, in violation of the Agreement, in diminishing amounts, since approximately 2008, and recently refused to make any payment to CENSOR. The aforesaid defendants have instead diverted Joint Venture funds into one or more accounts controlled by each of said defendants, and/or one or more of them; and now have clearly stated their intention of diverting Joint Venture income to a new corporation, HR 360 INC.

52.  Each of the foregoing wrongful acts by these defendants was done willfully, maliciously, and intentionally for the sole purpose of applying undue and improper economic pressure on CENSOR, to coerce him to consent to dissolution without an accounting.

53.   Additionally, CENSOR requests that the damages of CENSOR be assessed and that CENSOR shall have such other and further relief as this Court deems just, proper, and equitable, together with the costs and disbursements of this action.

## AS AND FOR A FOURTH COUNT

54.   CENSOR repeats, reiterates, and realleges each and every allegation set forth in the foregoing Paragraphs, numbered "1": through "53," inclusive, as if more fully set forth verbatim hereat.

55.   Defendants, THOMAS CECONI, and LILLIAN SHAPIRO, with intent to defraud and deceive MARTIN CENSOR, entered into a clandestine and illegal scheme on behalf of ASC, mandating   the legal conclusion that each is personally liable to MARTIN CENSOR for all damages in this lawsuit.

56.   THOMAS CECONI personally participated in the aforesaid fraud, and misrepresentations, and had personal knowledge of it.

57.   LILLIAN   SHAPIRO   personally   participated   in   the   aforesaid   fraud   and misrepresentations, and had personal knowledge of it.

58.   It is basic law that a corporate officer or officer of a limited liability company is held personally liable for a  fraudulent act committed in his or her capacity as an officer. See, e.g. Burton Manufacturing Co. Inc. v. Valiant Moving & Storage Inc., 239 A.D. 2d 452; Marine Midland Bank v. Russo Produce Co., 50 N.Y. 2nd 31, 44; I.Touger Inc. v. Tarram , 236 A.D. 2d 518.

59.   By reason of the foregoing, Plaintiff MARTIN CENSOR has been damaged in a sum of money to be determined by the Court or Jury, for which CENSOR asks the Court to

set damages at $5,000,000.00 and the relief requested in each of the Counts herein against Defendants ASC, CECONI and SHAPIRO.

WHEREFORE, PURSUANT TO APPLICABLE STATUTES AND DOCTRINES OF EQUITY, MARTIN CENSOR REQUESTS DAMAGES AS AFORESAID, AND A FULL AND COMPLETE ACCOUNTING AS AFORESAID, AGAINST DEFENDANTS AND EACH OF THEM IN THE SUM OF $5,000,000.00, AND/OR SUCH SUM AS THE COURT AND/OR JURY SHALL DETERMINE TOGETHER WITH ATTORNEYS' FEES, PLUS PUNITIVE DAMAGES, SUBJECT TO THE DETERMINATION OF A JURY AND/OR JUDGE OF THIS COURT, PLUS INTEREST, COSTS AND DISBURSEMENTS.

### JURY TRIAL DEMAND

PLAINTIFF DEMANDS A TRIAL BY JURY.

DATED: February 3 , 2011
New York, New York

RESPECTFULLY YOURS,

KOVEN & KRAUZ

By: _____
Mordchai Krausz (0928)
Attorneys For Plaintiff
358 Fifth Avenue, Suite 301
New York, NY 10001
(212) 736-7432

Litigation\Censor v. ASC – Complaint – REV444( 2.2.11)

16

## EXHIBITS

A.    Agreement of Joint Venture
B.    Email of Lillian Shapiro of 2/23/10
C.    Thomas Ceconi Email stating that expenses were being increased by the
       hiring of an editor at $50,000.00 per year.
D.    Mediation Letter of ASC's counsel
E.    Cancellation of Mediation by ASC 12/10/10 letter
F.    State of Connecticut record as to incorporation of HR 30 INC. –
       December 9, 2010.
G.    Email of 12/31/10
H.    12/16/10 Letter of Censor.

**EXHIBIT A**

**Benefits Essentials**

## JOINT VENTURE AGREEMENT

THIS JOINT VENTURE AGREEMENT ("Agreement"), made and entered into as of this day of April 11, 2003, by and between Martin Censor of T.P. Press ("Censor") and ASC Technologies of CT, LLC ("ASC").

### ARTICLE I - GENERAL PROVISIONS
**Business Purpose.** The business of the Joint Venture shall be as follows: To develop and market the website known as Benefits Essentials (www.BenefitsEssentials.com).

**Term of the Agreement** This Joint Venture shall commence on the date first above written and shall continue in existence until terminated, liquidated, or dissolved by law or as hereinafter provided.

### ARTICLE II - OBLIGATIONS OF THE JOINT VENTURERS
All parties share equally in the operations and decisions of the Joint Venture. The parties agree to a split of duties between themselves as follows:

Martin Censor is primarily responsible for updating the content.

ASC is primarily responsible for marketing and technology (i.e., site development and maintenance). ASC will host the site on its servers and/or at its expense.

### ARTICLE III - ALLOCATIONS
**Profits and Losses.** Any income or loss of the Joint Venture for federal income tax purposes determined by the Joint Venture's fiscal year, including, without limitation, each item of Partnership income, gain, loss or deduction.

Commencing on the date hereof and ending on the termination of the business of the Joint Venture, all profits, losses and other allocations to the Joint Venture shall be allocated quarterly, as follows: Fifty percent (50%) to ASC and fifty percent (50%) to Censor. In the event of the sale of the partnership, Censor will receive 50% of the sale price and ASC will receive 50% of the sale price.

### ARTICLE IV - RIGHTS AND DUTIES OF THE JOINT VENTURERS
**Other Business of the Parties to this Agreement.** The parties to this Agreement and their respective Affiliates may have interests in businesses other than the Joint Venture business. The Joint Venture shall not have the right to the income or proceeds derived from such other business interests. The parties stipulate that Censor is the sole owner of the copyright to the site content; Censor shall retain such rights during the life of this venture and in the event of termination or dissolution of the venture. The Partnership shall have the exclusive rights to content on the web for the life of the venture. Censor cannot use any content from the site for any other ventures unless agreed to in writing by ASC which competes with Benefits Essentials. Censor may use portions of the content for articles and the like in other publications that do not compete with BenefitsEssentials.

## ARTICLE V - INDEMNIFICATION OF THE JOINT VENTURERS

The parties to this Agreement shall have no liability to the other for any loss suffered which arises out of any action or inaction if, in good faith, it is determined that such course of conduct was in the best interests of the Joint Venture and such course of conduct did not constitute negligence or misconduct. Censor indemnifies ASC against any copyright infringements which may occur related to any content on the BE site. ASC shall cooperate with and provide Censor with any documentation necessary to defend any such action against third parties.

## ARTICLE VI - DISSOLUTION

The Joint Venture shall be dissolved upon the happening of any of the following events: (a) The adjudication of bankruptcy, filing of a petition pursuant to a Chapter of the Federal Bankruptcy Act, withdrawal, removal or insolvency of either of the parties. *(b)* The sale or other disposition, not including an exchange of all, or substantially all, of the Joint Venture assets. (C) Mutual agreement of the parties. Upon dissolution, other than the sale of the partnership including the partnership property (BenefitsEssentials), the parties agree that the content of BenefitsEssentials shall remain the property of Censor.

## ARTICLE VII - MISCELLANEOUS PROVISIONS

**Books and Records.** The Joint Venture shall keep adequate books and records at its place of business, setting forth a true and accurate account of all business transactions arising out of and in connection with the conduct of the Joint Venture.

**Validity.** In the event that any provision of this Agreement shall be held to be invalid, the same shall not affect in any respect whatsoever the validity of the remainder of this Agreement.

**Integrated Agreement.** This Agreement constitutes the entire understanding and agreement among the parties hereto with respect to the subject matter hereof, and there are no agreements, understandings, restrictions or warranties among the parties other than those set forth herein provided for.

**Headings.** The headings, titles and subtitles used in this Agreement are for ease of reference only and shall not control or affect the meaning or construction of any provision hereof.

**Notices.** Except as may be otherwise specifically provided in this Agreement, all notices required or permitted hereunder shall be in writing and shall be deemed to be delivered when deposited in the United States mail, postage prepaid, certified or registered mail, return receipt requested, addressed to the parties at their respective addresses set forth in this Agreement or at such other addresses as may be subsequently specified by written notice.

**Applicable Law and Venue.** This Agreement shall be construed and enforced under the laws of the State of New York.

**Other Instruments.** The parties hereto covenant and agree that they will execute each such other and further instruments and documents as are or may become reasonably necessary or convenient to effectuate and carry out the purposes of this Agreement.

This agreement is binding upon the heirs, court appointed representatives, assigns, and successors of the parties.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

So agreed and executed this /4th, day of _April_ , 2003.

Martin A. Censor

Lillian Shapiro
ASC Technologies of CT, LLC

**EXHIBIT B**



**Mail**

**Calendar**

**Contacts**

Deleted Items
Drafts [108]
Inbox (76)
Junk E-Mail [1]
Sent Items

Click to view all folders

Manage Folders...

Reply | Reply to All | Forward | Move | X Delete | Junk | Close

## RE: summary of our deal

Lillian Shapiro (ASC)

You replied on 1/2/2009 11:28 AM.

**Sent:** Tuesday, December 23, 2008 11:55 AM
**To:** Experts@benefitsessentials.com

will do--maintenance as you mentioned is necessary to make sure everything stays working and accurate.

---

**From:** Experts@benefitsessentials.com
**Sent:** Tue 12/23/2008 11:42 AM
**To:** Lillian Shapiro (ASC)
**Cc:** Tom Ceconi (ASC)
**Subject:** RE: summary of our deal

OK. But (there's always a "but")...

Can we please agree to cut out (or cut down on) any "outside" expenses during the next two months' trial period. By that I mean no new editorial projects or new technology. Of course, whatever is required for "maintenance" or ongoing projects should continue. In this way, we can truly focus on the product, and gauge if this new arrangement is working out.

Happy holidays.

CONFIDENTIALITY NOTICE: This message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information, intended for a specific individual and purpose, and is protected by law. Any unauthorized review, use, disclosure, copying, or distribution of this message is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

-----Original Message-----
From: Lillian Shapiro (ASC)
Sent: Tue 12/23/2008 11:30 AM
To: Experts@benefitsessentials.com
Cc: Tom Ceconi (ASC)
Subject: summary of our deal

Hi Martin,
I feel confident we can all make this work. To summarize, Tom and I will get an additional 15% from existing  sales and 15% from new sales commissions. I will prepare a commission report monthly. You will get a minimum of $6,000 a month from the busines or we will recalculate our increased percentage to make this work for your needs. If any issues arise about making this work, I will call to discuss but I hope and pray we can meet these obligations successfully. I feel very energized and filled with hope for the future.

Thanks for your support and faith in our business.
Lillian

Connected to Microsoft Exchange

5/28/2010 2:59 PM

**EXHIBIT C**

Case 1:11-cv-00571-JBW-RLM   Document 18   Filed 03/23/11   Page 64 of 77

**From:** Martin Censor <mcensor@yahoo.com>
**To:** Mordchai Krausz <mkrauszesq@aol.com>
**Subject:** Content Management Policy
**Date:** Tue, Dec 7, 2010 12:44 pm
**Attachments:** HR_Benefits_Essentials_Content_Management.doc (681K)

attached

----- Forwarded Message -----
**From:** Tom Ceconi <tom@aschq.com>
**To:** BenefitsEssentials.com <benefitsessentials@yahoo.com>
**Sent:** Tue, May 4, 2010 11:25:07 AM
**Subject:** FW: HIRE Act

Hi Martin,

This month's check will have an extra $1,500 due to the quarterly payment from HR Technology Advisors (Joe Markland).

At this time, HR & Benefits Essentials site requires full-time management of content. No longer can this job can be done part-time. The attached content management policy which you wrote years ago is a good guideline which we are following. To get the job done, we have a full-time editor at $50,000 a year plus benefits, a part-timer who does link checking and review of all the links on our site. The site has thousands of links that break/change regularly and have to be maintained. We also average payment to Ken of about $1,000 a month for ask the experts questions.

If you want to come and work in Stamford for 9+ hours a day for about $6,000 a month, we can consider terminating Tim and Kim but all that work would fall to you and it must be done in a timely basis, all day, every day.

Regards,

Tom

-----Original Message-----
From: benefitsessentials@yahoo.com [mailto:benefitsessentials@yahoo.com]
Sent: Sunday, May 02, 2010 12:08 PM
To: Lillian Shapiro
Subject: Re: HIRE Act

Any money in the till?
I'm not sure any more what the split is these days but I cannot afford to give up my share. I have a mortgage and tuitions to pay.

Martin Censor
HR and Benefits Essentials
www.HRandBenefits.com


-----

The contents of this email may be confidential or proprietary and not intended for you.  If that is the case, first, we apologize for the inconvenience.  Second, please keep the email's content confidential and do not use it, then return it to the sender as soon as possible and delete your copy.  Please also note that this email does not contain any explicit or implicit tax advice for any jurisdiction and any actions based on the email cannot be used to avoid taxes.

**EXHIBIT D**

**LERNER & GUARINO, LLC**
Attorneys at Law
112 Prospect Street
Stamford, Connecticut 06901
www.lernerandguarino.com

Edward N. Lerner*
George Kent Guarino**

Also admitted in NY, FL, DC*
Also admitted in MI**

Telephone (203) 316-8122
Facsimile (203) 363-7914

October 22, 2010

Murray Koven, Esq.
350 Fifth Avenue, Suite 7610
New York, NY 10118

**Without prejudice.   For
Settlement  purposes only.  Not to
be taken as admission of any fact.**

*RE:   ASC- Censor*

Dear Mr. Koven:

Mr. Censor has recently corresponded with my client.  My client intends attempt to have a meaningful settlement, which is why we are going to mediation.  The alternative is obviously litigation, which will be extremely costly for both parties, time consuming and may become very complex in scope, potentially involving other parties. My client would much prefer to arrive at a mutually agreed upon settlement resulting from a productive mediation.

Very truly yours,

Edward N. Lerner

ENL/dmc

**EXHIBIT E**

**LERNER & GUARINO, LLC**
Attorneys at Law
112 Prospect Street
Stamford, Connecticut 06901
www.lernerandguarino.com

Edward N. Lerner*
George Kent Guarino**

Also admitted in NY, FL, DC*
Also admitted in MI**

Telephone (203) 316-8122
Facsimile (203) 363-7914

December 10, 2010

**VIA FEDERAL EXPRESS**
**TRACKING NUMBER: 796539154951**

Murray Koven, Esq.
350 Fifth Avenue, Suite 7610
New York, NY 10118

*RE:   ASC- Censor*

Dear Mr. Koven:

Enclosed is a letter from ASC Technologies to Mr. Censor.  Based upon that, the mediation is cancelled.

Very truly yours,

Edward N. Lerner

ENL/jb
enclosure



**ASC TECHNOLOGIES**
400 Main Street
Stamford, CT 06901
**[p]** 203.977.8100
**[f]** 203.977.7825
**[i] www.aschq.com**

December 10, 2010


Mr. Martin Censor
141-05 68th Drive
Flushing, NY 11367

Dear Martin:

As we both know well, we have been in discussions now for a number of months with respect to our working relationship.  A voluntary mediation was scheduled for December 21, 2010.

We now understand that the mediation will cost us a substantial sum in attorneys' fees, as well as any litigation if we are unsuccessful in finding a resolution.  Therefore, after considerable thought, ASC Technologies of CT, LLC is terminating the joint venture with you as of 5:00 pm EST on December 17, 2010, and we wish to commence the process of winding up.

Pursuant to Article VI of the Joint Venture Agreement dated April 11, 2003 we are in the process of gathering the HTML files for transmission to you.

We would like now to turn our discussions with you to complete the winding up of the joint venture.  Among other things, of course, we will want to execute appropriate releases for our mutual benefit.

We suggest beginning those discussions no later than early next week, with the goal of addressing the fundamentals of the winding up before year's end, if possible, in order to keep the entire transaction within the 2010 year.

This obviates the need for mediation and it is being cancelled.

Regards,

Tom Ceconi
President

**EXHIBIT F**

# business inquiry

**BUSINESS DETAILS:**

| | | |
|---|---|---|
| **Business Name:** | **Business ID:** | **Business Address:** |
| HR 360, INC. | 1022680 | NONE |
| **Mailing Address:** | **Citizenship/State Inc:** | **Last Report Year:** |
| NONE | Domestic/CT | |
| **Business Type:** | **Business Status:** | **Date Inc./Register:** |
| Stock | Active | Dec 09, 2010 |

**PRINCIPALS:**

No Principal Records found for Business with ID: 1022680

**BUSINESS SUMMARY:**

| | | |
|---|---|---|
| **Agent Name:** | **Agent Business Address:** | **Agent Residence Address:** |
| THOMAS CECONI | 100 MAIN STREET, SUITE 410, STAMFORD, CT | 57 TULLER RD, FAIRFIELD, CT, 06825 |

» **View Name History**          » **View Filing History**          » **View Shares**

Cancel

**EXHIBIT G**

**From:** benefitsessentials@yahoo.com
**To:** Moti Krausz <mkrauszesq@aol.com>
**Subject:** Fw: Announcement about the HR & Benefits Library
**Date:** Fri, Dec 31, 2010 1:21 pm

Are they using the servers that they bought with my money?
And if its a new company, how could ASC give away my subscriber list to a competing company?

Martin Censor
HR & Benefits Essentials
BenefitsEssentials.com
www.HRandBenefits.com

---

**From:** "Tom Ceconi" <tom@aschq.com>
**Date:** Fri, 31 Dec 2010 12:05:02 -0500
**To:** benefitsessentials@yahoo.com<benefitsessentials@yahoo.com>
**Subject:** Announcement about the HR & Benefits Library

Dear Martin,

We at ASC, would like to wish you and your family a happy, healthy and prosperous New Year. Although this past year has been tumultuous for the health care industry, we have some very good news.

We have created an entirely new, comprehensive online HR library website with new content and interactive tools. We have a great team of professionals in place including attorneys, editors and technologists who are dedicated to delivering our premium online HR library. The new site is dynamic and offers a great new look-and-feel. Our new company, HR 360, Inc., (**www.hr360.com**), is solely dedicated to delivering premium human resource products, such as a dynamic HR library featuring the most current federal and state laws in an easy-to-understand and navigate website plus how-to-guidelines, forms, posters and online HR tools.

ASC will only be supporting HR & Benefits Essentials through January 28, 2011. HR 360 is prepared to assume responsibility for and fulfill the remainder of your subscription at <u>no additional cost</u> should you so choose. Please let us know about your decision.

With our new site, you will get more human resources and employee benefits content, timely and relevant news, more forms, great new resources like our interactive 'job description builder' and 'salary benchmark' tool, and much more. And, we are just getting started. In the months to come, we plan to add many more great new interactive features to meet your human resources and employee benefits needs.

The next step is to go to this web address to receive your welcome kit:

**www.hr360.com/welcome**

Enter your email address and we will send you your 'Getting Started' guide and information packet. Of course, you can call or email us with any questions or concerns, below is our contact information:

- Tom, 877-977-1944, ext. 114 or tom@hr360.com
- Lillian, 877-977-1944, ext. 115 or lillian@hr360.com

Regards,

Tom Ceconi & Lillian Shapiro

**EXHIBIT H**



# Martin A. Censor, Esq.

December 16, 2010

Dear Tom:

I am in receipt of your letter, Dated December 10, 2010.

As you are well aware, you contacted me in May of this year and insisted on my attendance at a meeting—represented by Counsel—at the offices of your Attorney, Edward Lerner. That meeting took place on Wednesday, May 12, 2010.

The purpose of that meeting—as I was advised *at the meeting*—was to discuss options for making the venture work going forward, and to consider a change in the responsibilities of the parties and the revenue share. As no meaningful arrangement was agreed to in that meeting or subsequent thereto, you and your attorney ***insisted*** that we go to mediation, to discuss a mutually-acceptable arrangement. Mr. Lerner subsequently corresponded with my attorney, Mr. Koven, stating in part:

> "My client intends [to] attempt to have a meaningful settlement, which is why we are going to mediation. The alternative is obviously litigation, which will be extremely costly for both parties, time consuming and may become very complex in scope, potentially involving other parties. My client would much prefer to arrive at a mutually agreed upon settlement resulting from a productive mediation."

In your December 10th letter you note that you "now understand that the mediation will cost us a substantial sum in attorneys' fees, as well as any litigation if we are unsuccessful in finding a resolution."

I find it odd that we've been discussing the mediation for months, scheduled it in October, and you only "**now**" understand the costs involved. Moreover, as your attorney has noted, the alternative—litigation—will be even more costly and time consuming for you.

In your letter, you cite Article VI of our Agreement. However, you omit an integral provision of that Article, which states that:

> "The Joint Venture shall be dissolved upon the happening of any of the following [3] events:
> ***(a) The adjudication of bankruptcy...***
> ***(b) The sale or other disposition...***
> ***(c) Mutual agreement of the parties...***"
> *(Emphasis added)*

Your letter indicates that you are unilaterally "terminating the joint venture" on December 17, 2010. You have not addressed any of the stated reasons by which termination can be invoked. As none of the applicable reasons are extant, there is no basis for such a dissolution or termination.

141-05 68th Drive • Flushing, NY 11367 • 718.520.0065 • mcensor@Lawyer.com

As you were undoubtedly informed by your counsel, our Joint Venture Agreement, makes no provision for such termination at the whim of one party, as you have attempted to do.

If you insist on cancelling the mediation and any further meaningful discussion, you will leave me no choice but to instruct my attorneys to commence litigation. Litigation—as you note—will necessarily frustrate the ideal of a mutually beneficial, cost-effective resolution for the future of the venture.

Accordingly, I demand an immediate accounting of the Joint Venture, as well as the immediate payment of the past due amounts which are due me. Until such past due amounts are resolved, there can be no "winding up" discussions or execution of "appropriate releases."

In the absence of a satisfactory response, I propose to seek recourse in the appropriate State and Federal Courts, which will include, but not be limited to, a cause of action to compel an accounting; an injunction against the proposed dissolution, misappropriation and disposal of the assets of the Joint Venture; a cause of action for breach of fiduciary obligations by you and Lillian; as well as an action in the United States Copyright Office for infringement of copyright.

Kindly advise how you wish to proceed.


Very truly yours,



Martin Censor


cc: Murray Koven, Esq.

## CERTIFICATION

I, MARTIN CENSOR, certify that I have read the foregoing Complaint and know its contents.  The matters stated in the Complaint are true of my own knowledge, except that those items which are alleged upon information and belief, and, as to those items, I believe them to be true based upon books and records presently accessible to me.

Dated: Flushing, New York
February _3_, 2011

_____
MARTIN CENSOR